# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>EVERETT JUSTIN CURTIS,<br><br>　　　　　　　　　　Defendant. | Case No. 21-cr-02063-BAS-2<br>Case No. 23-cv-01071-BAS<br><br>**ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255 (ECF No. 132)** |

As noted by the Supreme Court, "the guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977). The system of plea bargaining can be advantageous to both sides: it results in a speedy disposition, it can reduce the amount of custodial time a defendant is facing, and prosecutors conserve vital and scarce resources. But "[t]hese advantages can be secured . . . only if dispositions by guilty plea are accorded a great measure of finality." *Id.*

So it is with this case. Defendant Everett Justin Curtis avoided a twenty-year mandatory minimum sentence, but in exchange, he admitted that the fentanyl he

helped procure was the cause of his friend B.M.P.'s death.  He admitted this as part of the factual basis for his plea, despite the fact that the coroner's report reflected that other factors contributed to the death, including alcohol, cocaine, and the victim's hypertensive cardiovascular disease.  Ultimately, Defendant obtained a sentence of 151 months, well below the 240-month sentence he faced if he had been convicted at trial.

Having waived his right to appeal, Defendant now attempts to circumvent the plea bargain, asking this Court to—not set aside his conviction for the lesser included offense—but simply reduce his sentence to 121 months.  The Court declines to do so and **DENIES** the Motion filed under 28 U.S.C. § 2255.  (ECF No. 132.)

I.   BACKGROUND

   A.   Written Plea Agreement

On August 22, 2022, in exchange for dismissing the Indictment charging distribution of fentanyl resulting in death, which carried a twenty-year mandatory minimum sentence, Defendant pled to knowingly distributing fentanyl.  (ECF Nos. 94, 135.)  In the written plea agreement, Defendant admitted that "as a result of B.M.P's use of the fentanyl supplied by Defendant, B.M.P overdosed and died."  (Plea Agreement § II.B, ECF No. 93.)  Furthermore, "Defendant agrees and stipulates . . . that, beyond a reasonable doubt, B.M.P.'s death was caused by the fentanyl Defendant provided to B.M.P."  (*Id.*)  Counsel states this plea agreement was reached after several discussions with Defendant, which involved a review of the facts, including the coroner's report; the elements of the crime; and potential punishment.  (Declaration of Mayra Garcia ("Garcia Decl.") ¶ 5, ECF No. 139-1 at Ex. 4.)

In this written plea agreement, Defendant also stated that he "had a full opportunity to discuss all the facts and circumstances of this case with defense counsel" (Plea Agreement § VI.A), and that he was satisfied with his counsel (*id.* § XV).  The parties agreed to recommend a base offense level of 38 because death

resulted from the use of the substance Defendant distributed, and "BECAUSE DEFENDANT ADMITS THAT DEATH RESULTED, DEFENDANT IS NOT SAFETY-VALVE ELIGIBLE UNDER § 5C1.2(a)(3)." (*Id.* § X (emphasis in original).)

Additionally, Defendant acknowledged that he was facing a maximum of twenty years in custody. He understood the Sentencing Guidelines are advisory, not mandatory, and that the Court "may impose a sentence more severe or less severe than the otherwise applicable Guidelines, up to the maximum" possible sentence. (Plea Agreement §§ III.A, VIII.)

Finally, in the written plea agreement, Defendant agreed to the following appellate waiver:

> Defendant waives (gives up) all rights to appeal and to collaterally attack every aspect of the conviction and sentence. This waiver includes, but is not limited to, any argument that the statute of conviction or Defendant's prosecution is unconstitutional and any argument that the facts of this case do not constitute the crime charged. The only exceptions are the Defendant may collaterally attack the conviction or sentence on the basis that Defendant received ineffective assistance of counsel.

(Plea Agreement § XI.)

**B.     Plea Colloquy**

At the plea colloquy, Defendant said he had read the written plea agreement completely or someone had read it to him. (Plea Colloquy Tr. 5:14–16, ECF No. 139-1 at Ex. 2.) He also repeated that he was satisfied with the representation of his counsel, that he had a chance to talk to his lawyer about the plea agreement, and he had no questions about it. (*Id.* 5:5–6, 17–21.)

Defendant again acknowledged that he was facing twenty years in custody. (Plea Colloquy Tr. 8:5–11.) The Court advised Defendant that, although his lawyer may have advised him of the guidelines, the Court "may see it differently, and, if [the Court] find[s] that your guideline range is different than your lawyer is estimating it to be, you will not be allowed to withdraw your guilty plea." (*Id.* 10:5–10.)

Defendant said he understood. (*Id.* 10:11.) Additionally, the Court repeated that the Sentencing Guidelines were advisory, not mandatory, and if the Court "sentence[s] you to more time than your guideline range, you will not be allowed to withdraw your guilty plea." (*Id.* 9:23–10:3.) Again, Defendant said he understood and still wanted to plead guilty. (*Id.* 10:4, 17–18.)

The Court reviewed the appellate waiver with Defendant, and he agreed that, as part of his plea agreement, he had given up the right to appeal or collaterally attack the sentence "even if [he did not] like what ultimately happens at sentencing." (Plea Colloquy Tr. 6:11–15.) As part of the factual basis for his plea, Defendant agreed that he had supplied fentanyl to B.M.P, and as a result of the fentanyl he helped B.M.P. obtain, B.M.P overdosed and died. He agreed the death was caused by that fentanyl. (*Id.* 11:15–24.)

### C. Sentencing

In the Presentence Report, the Probation Officer noted that "[t]he San Diego County Medical Examiners Office confirmed, based on the autopsy findings, [B.M.P.'s] cause of death was acute fentanyl, alcohol and cocaine intoxication with hypertensive cardiovascular disease listed as contributing." (Presentence Report ("PSR") ¶ 6, ECF No. 121.) The Probation Department calculated Defendant's guideline range as 188–235 months. (*Id.* ¶ 111.) Defense counsel reviewed this PSR with Defendant before sentencing. (Garcia Decl. ¶ 6.)

At sentencing, both the Government and defense counsel agreed that Defendant's base offense level began at 38 because the fentanyl he had helped distribute caused B.M.P.'s death. (ECF Nos. 98, 109.) With acceptance of responsibility, the resulting guideline range was 188–235 months. (*Id.*) The Court noted that, although Defendant's criminal history category was only a II, there were numerous serious convictions that did not count in calculating his criminal history category including robbery, theft with a prior, assault with a semi-automatic firearm, and illegal possession of a firearm with a prior. (PSR ¶¶ 52–55; Sentencing Tr.

10:11–21, ECF No. 139-1 at Ex. 3.)  There was no mention of gang ties in the PSR or at sentencing.

The Court ultimately sentenced Defendant to 151 months.  (ECF No. 123.) After sentencing Defendant, the Court confirmed with both counsel and Defendant that Defendant had given up his right to appeal.  (Sentencing Tr. 11:20–24.)

### D.     This Motion

Defendant now files a Motion under 28 U.S.C. § 2255, claiming: (1) ineffective assistance of counsel; (2) his offense was not the cause of death; (3) he was eligible for safety valve; and (4) the Court should have varied downward.  (ECF No. 132.)  Defendant asks that his sentence be reduced from 151 to 121 months.  (*Id.*) The Government responds (ECF No. 139), and Defendant replies (ECF No. 140). For the reasons stated below, the Court denies Defendant's Motion.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2255, a defendant may attack a sentence on "the ground that the sentence was imposed in violation of the Constitution of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  "Section 2255 is not designed to provide criminal defendants repeated opportunities to overturn their convictions on grounds which could have been raised on direct appeal."  *United States v. Dunham*, 767 F.2d 1395, 1397 (9th Cir. 1985); *see also United States v. Braswell*, 501 F.3d 1147, 1150 (9th Cir. 2007) ("[H]abeas review is not to substitute for an appeal.").  "[A]n error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184 (1979).  "[U]nless the claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained far more limited."  *Id.* at 185.

Allegations of sentencing errors, when not directly appealed, are not generally reviewable by means of a § 2255 motion, and it is generally inappropriate for the

district court to consider the merits of such a challenge. *See United States v. Schlesinger*, 49 F.3d 483, 484 (9th Cir. 1994) ("[N]onconstitutional sentencing errors that have not been raised on direct appeal have been waived and generally may not be reviewed by way of 28 U.S.C. § 2255."). To the extent a defendant fails to raise these issues on direct appeal, he has procedurally defaulted the claims, and the claims may be raised in a habeas petition only if the defendant can first demonstrate either "cause" for failing to raise the issues earlier and actual "prejudice" or that he is "actually innocent." *Braswell*, 501 F.3d at 1149.

Furthermore, "[a] defendant's waiver of his rights to appeal and to bring a collateral attack is generally enforced if '(1) the language of the waiver encompasses his right to appeal on the grounds raised, and (2) the waiver is knowingly and voluntarily made.'" *Davies v. Benov*, 856 F.3d 1243, 1246 (9th Cir. 2017) (quoting *United States v. Jeronimo*, 398 F.3d 1149, 1153 (9th Cir. 2005)). "While a defendant must waive the right to appeal knowingly and voluntarily, the defendant need not be aware of possible grounds of appeal." *United States v. Lo*, 839 F.3d 777, 784 (9th Cir. 2016). "We will enforce a valid waiver even if the claims that could have been made on appeal absent the waiver appear meritorious because 'the whole point of a waiver….is the relinquishment of claims *regardless* of this merit.'" *Id.* at 783 (quoting *United States v. Medina-Carrasco*, 815 F.3d 457, 462–63 (9th Cir. 2016)).

"[A] defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was ineffective.'" *Lambert v. Blodgett*, 393 F.3d 943, 979 (9th Cir. 2004) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56–57 (1985)). Even in a claim of ineffective assistance of counsel in a guilty plea, the defendant must meet the *Strickland* test; that is, he must show first "that counsel's assistance was not within the range of competence demanded of counsel in criminal cases," and second, that he suffered actual prejudice as a result of this incompetence. *Id.* at 979–80 (citing *Hill*, 474 U.S. at 57–58).

"A deficient performance is one in which counsel made errors so serious that she was not functioning as the counsel guaranteed by the Sixth Amendment." *Iaea v. Sunn*, 800 F.2d 861, 864 (9th Cir. 1986) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Review of counsel's performance is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation." *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1987). The court should not view counsel's actions through "the distorting lens of hindsight." *Hendricks v. Calderon*, 70 F.3d 1032, 1036 (9th Cir. 1995) (quoting *Deutscher v. Whitley*, 884 F.2d 1152, 1159 (9th Cir. 1989)).

In order to satisfy the second "prejudice" prong in a guilty plea case, "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

### III.   ANALYSIS

#### A.   Ineffective Assistance of Counsel

Defendant argues his attorney was ineffective in that his attorney had "little time to gather all the facts in the case," failed to provide him with the PSR, misinformed him as to the sentence he would be agreeing to since Defendant believed he was agreeing to a 120-month sentence, and "made no effort to distinguish the irregularities in the coroner's report." (ECF No. 132.) Not one of these claims rises to the level of ineffective assistance of counsel.

First, with respect to the allegation that counsel had insufficient time to gather the facts of the case, that claim is belied by the record. The record shows that, at the request of counsel, the Court continued the trial date several times after a new attorney was appointed. (ECF Nos. 67, 79, 86.) These continuances were to give counsel plenty of time to gather the facts of the case. Counsel confirms that she had several discussions with Defendant, which involved a review of the facts, including the coroner's report; the elements of the crime; and potential punishment. (Garcia

Decl. ¶ 5.) Moreover, Defendant stated in his written plea agreement that he was satisfied with his counsel and that he "had a full opportunity to discuss all the facts and circumstances of this case with defense counsel." (Plea Agreement §§ VI.A, XV.) He repeated these statements at the plea colloquy where he said he was satisfied with the representation of his counsel, he had a chance to talk to his lawyer about the plea agreement, and he had no questions about it. (Plea Colloquy Tr. 5:5–6, 17–21.) Thus, this ground is patently frivolous.

Additionally, although Defendant claims he did not receive a copy of the PSR, he fails to explain how this was prejudicial. Counsel states that she reviewed the PSR with Defendant. (Garcia Dec. ¶ 6.) Defendant does not explain how receiving a copy of the PSR would have resulted in his insistence that he go to trial.

Additionally, to the extent Defendant is arguing his attorney misinformed him that he was agreeing to a 120-month sentence, the written plea agreement and the plea colloquy make it clear that Defendant was adequately advised that he was facing a twenty-year maximum and that there was no guarantee the Court would follow the recommendations of his lawyer. Specifically, the Court advised Defendant that, although his lawyer may have estimated his guideline range, the Court "may see it differently, and, if [the Court] finds that your guideline range is different than your lawyer is estimating it to be, you will not be allowed to withdraw your guilty plea." Defendant said he understood. (Plea Colloquy Tr: 6:5–11.) Additionally, the Court repeated that the Sentencing Guidelines were advisory, not mandatory, and if the Court "sentence[s] you to more time than your guideline range, you will not be allowed to withdraw your guilty plea." (*Id.* 9:23–10:4.) Again, Defendant said he understood and still wanted to plead guilty. (*Id.* 10:4, 17–18.) Thus, even if counsel's advice was erroneous, as alleged by Defendant, he cannot show prejudice. He knew that he was facing up to twenty years in custody and that the Court may sentence him to a higher sentence than that suggested by his counsel. He indicated he still wanted

to plead guilty. Therefore, he cannot show that, but for counsel's advice, he would not have pled guilty and would have insisted on going to trial.

Finally, to the extent Defendant is arguing that his counsel "made no effort to distinguish the irregularities in the coroner's report," such an argument would have been useless because, as part of his plea agreement, Defendant admitted that the fentanyl he helped supply to B.M.P. was the cause of B.M.P.'s death. (Plea Agreement § II.B; Plea Colloquy Tr. 11:15–24.) *See United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008) ("Statements made by a defendant during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking the plea."); *Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity."). Thus, Defendant's counsel, who had agreed to a base offense level of 38 as part of the plea agreement, had no grounds to "distinguish the irregularities in the coroner's report."

Defendant was facing a twenty-year mandatory minimum sentence if he went to trial and the jury found that the fentanyl he helped B.M.P. obtain caused B.M.P.'s death. Defendant made an informed decision to plead to a lesser offense with a maximum sentence of twenty years and to admit as part of the factual basis that he caused the death of his friend. This decision was not an unreasonable one. The fact that there were other contributing factors to B.M.P.'s death may not have absolved Defendant from culpability. *See, e.g., Burrage v. United States*, 571 U.S. 204, 211 (2014) ([I]f poison is administered to a man debilitated by multiple diseases, it is a but-for cause of his death even if those diseases played a part in his demise, so long as, without the incremental effect of the poison, he would have lived."). At any rate, Defendant fails to show that his counsel's representation was constitutionally deficient or that he was prejudiced as a result of any alleged problems in representation. Hence, his claim for ineffective assistance of counsel must fail.

### B. Waiver of Appeal

To the extent Defendant is arguing the Court incorrectly calculated his guideline range or should have sentenced him differently, he waived his right to collaterally attack or appeal these claims as part of his plea agreement. First, the evidence supports that the waiver was knowingly and voluntarily made. He signed a written agreement acknowledging the waiver. And then at the plea colloquy, the Court reviewed the appellate waiver with Defendant and he agreed that, as part of his plea agreement, he had given up the right to appeal or collaterally attack the sentence "even if [he did not] like what ultimately happens at sentencing." (Plea Colloquy Tr. 6:11–15.) This waiver was confirmed a third time after the Court had sentenced Defendant to 151 months; the Court inquired of both counsel and Defendant whether appeal had been waived and both agreed it had. (Sentencing Tr. 11:20–24.)

Second, the clear language of the waiver encompasses "all rights to appeal and to collaterally attack every aspect of the conviction and sentence. This waiver includes, but is not limited to, any argument that the statute of conviction or Defendant's prosecution is unconstitutional and any argument that the facts of this case do not constitute the crimes charged." (Plea Agreement § XI.) Thus, with the exception of ineffective assistance of counsel, Defendant clearly waived his right to appeal or collaterally attack his sentence on any other ground.

### C. Failure to Raise at Sentencing Or on Appeal

To the extent Defendant is raising non-constitutional issues, e.g., that the Court incorrectly calculated his guideline range, should have found him eligible for safety valve, and should have varied downward, these issues are inappropriate for the Court to consider by means of a § 2255 Motion. Section 2255 is not designed to allow a defendant to circumvent appeal, particularly when his appellate rights have been waived as part of the plea agreement. Defendant has not offered any cause for failing to raise the issues earlier, nor does he demonstrate actual prejudice or claim that he

is actually innocent. Hence, the Court find these claims were procedurally defaulted. *See Braswell*, 501 F.3d at 1149.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Vacate, Set Aside, or Correct Sentence under § 2255. (ECF No. 132.)  The Clerk shall **TERMINATE** Defendant's related motion. (ECF No. 133.)  <u>Further, the Clerk is directed to close Case No. 23-cv-01071</u>.

\* \* \*

## CERTIFICATE OF APPEALABILITY

A district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the § 2255 movant.  "A COA may issue 'only if the applicant has made a substantial showing of the denial of a constitutional right.'" *Buck v. Davis*, 580 U.S. 100, 115 (2017) (quoting 28 U.S.C. § 2253(c)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Id.* (quoting *Miller El v. Cockrell*, 537 U.S. 322, 327 (2003)).

Defendant's § 2255 Motion does not meet this standard.  His arguments are without merit and his factual contentions are contradicted by the record before the Court.  Accordingly, the Court declines to issue a certificate of appealability in this action.

**IT IS SO ORDERED.**

**DATED: September 1, 2023**

Hon. Cynthia Bashant
United States District Judge